

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MEDALLION PRODUCTS, INC.; ENVERA, LLC; and PERFORMANCE CHEMICALS, INC., | ) ) ) ) |
| Plaintiffs, | ) ) No. 06 C 2597 |
| v. | ) ) Judge John W. Darrah ) |
| H.C.T.V., INC.; PLYMOUTH DIRECT, INC.; HARRIET CARTER GIFTS, INC.; NATURE'S PILLOWS, INC.; DIRECT RESPONSE, INC.; MEDIA ENTERPRISES II, INC. d/b/a MEDIA ENTERPRISES, INC.; BILL McALISTER; BRAD SPECTER; STEVE SILBIGER; and INNOVATIVE CHEMICALS CORPORATION, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a multi-count complaint against Defendants, seeking injunctive relief and monetary damages. Defendants, Nature's Pillows, Inc. and Direct Response, Inc. (hereinafter the "NPI Defendants"), joined by Defendant, Plymouth Direct, Inc. ("Plymouth Direct"), filed counterclaims against Plaintiffs, Medallion Products, Inc. ("Medallion"), Envera, LLC ("Envera"), and Third-Party Defendants Monica Kroeger ("Kroeger") and Sheetal Ghai ("Ghai"). Defendants/Counter-Plaintiffs' allegations of (1) defamation *per se*, (2) trade libel, (3) violation of the Illinois Uniform Deceptive Practices Act, (4) maintenance, and (5) conspiracy are brought against Medallion, Kroeger, and Ghai. Defendants/Counter-Plaintiffs' conspiracy claim is also alleged against Envera. Presently before the Court is Plaintiffs/Counter-Defendants' Motion to Dismiss the NPI Defendants' counterclaims.

## BACKGROUND

A reading of the NPI Defendants' First Amended Corrected Counterclaim supports the following summary of the alleged operative conduct of the parties.

The NPI Defendants are the co-owners and one of the registered trademark holders of a product called "Urine Gone™." The NPI Defendants purchased the formula for Urine Gone™ from Medallion based on purchase order contracts. There was no exclusivity agreement between the parties obligating the NPI Defendants to purchase the formula only from Medallion. In the summer of 2005, the NPI Defendants purchased the formula from an alternative source, Innovative Chemicals Corporation ("ICC"). After learning this, Medallion used outside and in-house facilities to test ICC's formula for the presence of bacteria, which would reveal whether the enzymes Medallion used in its formula were present in the ICC formula. However, testing for bacteria did not confirm the presence of all types of enzymes, particularly the presence of protease enzymes. By testing for the presence of an "aerobic plate count," the results indicated that the enzymes used in Medallion's formula were not present in the ICC formula.

After receiving the test results, Medallion, through its counsel, sent a letter to the NPI Defendants, claiming that the two parties had a "two-way exclusivity" agreement and that Medallion conducted several tests that confirmed that the product using the ICC formula is "defective" and "counterfeit." The NPI Defendants responded to the letter by requesting copies of the agreement and test results. Medallion's counsel sent another letter, stating that both Medallion and its counsel were confident in the test results. Neither a copy of an agreement nor a copy of the test results were included with the letter.

After receiving the test results, Medallion disseminated information that the ICC formula contained no enzymes. For example, Medallion's counsel wrote a letter to the Federal Trade Commission ("FTC"), providing test results that included "aerobic plate count per gram" values. However, the letter inaccurately labeled the units of the values as "enzyme count per gram/milliliter" rather than "aerobic plate count per gram." After Medallion's counsel sent the letter, the FTC initiated an investigation into Urine Gone™.

Additionally, two executive officers of Medallion, Monica Kroeger and Sheetal Ghai, met with class action lawyers to discuss the ICC formula test results. Kroeger and Ghai informed the lawyers that the ICC formula did not contain the enzymes used by Medallion and that the NPI Defendants switched formulas to save money. However, Kroeger and Ghai did not inform the lawyers that the testing did not measure for other enzymes or that the NPI Defendants had been dissatisfied with their dealings with Medallion. Following the meetings, the class action lawyers filed suit against the NPI Defendants in the Eastern District of New York. *Eckhaus v. Nature's Pillows, et al.*, Case No. 06-CV-00985.

Medallion, through Kroeger, also supplied the test results to a reporter at Fox News in Dallas. Kroeger informed him that Urine Gone™ contained no enzymes. However, she did not inform him that the testing did not measure for all enzymes or that the NPI Defendants had been dissatisfied in dealing with Medallion. Following meetings between Kroeger and the reporter, Fox News aired a story on Urine Gone™.

Finally, Medallion disseminated false information to potential customers and joint venture partners and/or licensees. Kroeger and Darlene Negron of Medallion told attendees at the International Home & Housewares Show in Chicago, Illinois, that Urine Gone™ contained

3

no enzymes. Medallion also informed Emson, Inc., a potential joint venture and/or sublicense candidate of the NPI Defendants, that the ICC formula contained no enzymes and that the FTC and the class action lawyers were taking action against the NPI Defendants. Various emails sent from Kroeger to Emson employees contain this exchange of information. At the time, Medallion was dealing with Emson to distribute Medallion's own urine-cleaning product.

In addition to dissemination by Medallion of inaccurate information regarding the ICC formula, Michael Matheny, an employee of Envera, contacted the supplier of the enzymes used in the ICC formula under the pretense of seeking to purchase similar enzymes. Matheny requested from the supplier a statement by email that the enzymes would not break down urine. The supplier sent the email but has since admitted that it did not know and could not have known the actual effects of the enzymes on urine and sent the email because Matheny requested it.

## ANALYSIS

*Standard of Review for a Motion to Dismiss for Failure to State a Claim*

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). At the pleadings stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A filing under the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). A plaintiff is not required to plead the facts or the elements of the claim, with the exceptions found

in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud, mistake, etc.). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006) (*Kolupa*). In other words, any movant "tempted to write 'this complaint is deficient because it does not contain . . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Kolupa*, 438 F.3d at 713, *quoting Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original).

### Defamation per se

The NPI Defendants counterclaim that Plaintiffs published false and defamatory statements regarding the ICC formula to the FTC, the class action lawyers, Fox News, customers, and potential joint venture partners and/or licensees. In their motion to dismiss this counterclaim, Plaintiffs argue that Medallion's communications were privileged; the NPI Defendants did not portray the facts in their proper context; and when viewed in their proper context, Medallion's communications are substantially true.

This case is almost directly on point with *Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998) (*Cook*). In *Cook*, Oprah Winfrey filed a motion to dismiss four counts of defamation filed against her by Randolph Cook, alleging that her communications were privileged. *Cook*, 141 F.3d at 324. In *Cook*, the court acknowledged that Ohio recognizes absolute privileges for expressions of opinion. However, *Cook* held that applying the privilege to the allegedly defamatory statements "required the district court to resolve factual issues that should not be reached on a motion to dismiss under Rule 12(b)(6)." *Cook*, 141 F.3d at 330.

Although *Cook* applied Ohio defamation law, any difference in the law between Ohio and Illinois, as applied here, is negligible. Plaintiffs cite Illinois cases supporting the existence

of privileges. *E.g., Adco Services, Inc. v. Bullard*, 256 Ill.App.3d 655 (1993) (*Adco*). However, even though the Illinois court in *Adco* considered the issue of privilege on a motion to dismiss, the court applied a factual inquiry. *Adco*, 256 Ill.App.3d at 660 ("Our examination of both letters reveals that they address matters that are of direct and immediate concern . . . ."). In federal courts, the pleadings stage is not the proper point for the court to conduct factual inquiries or make factual determinations. Since the NPI Defendants do not concede that any of Medallion's communications are privileged, to find a privilege, and to determine the extent that it applies to the allegedly defamatory statements, would require the resolution of factual issues, something not considered in ruling on a motion to dismiss. *See Cook*, 141 F.3d at 330.

Additionally, Plaintiffs argue that a motion to dismiss is warranted because taking the communications in their complete context reveals that they are substantially truthful. In *Cook*, a motion to dismiss was not warranted because the court had to perform an inquiry that "goes beyond the allegations of the complaint into a consideration of the context in which the statements were uttered." *Cook*, 141 F.3d at 330. Here, Plaintiffs urge the consideration of eight exhibits to determine the context in which the statements were made. In doing so, Plaintiffs improperly ask for consideration of matters beyond the complaint and the context of the allegations in the complaint.

Furthermore, Plaintiffs argue that a motion to dismiss is warranted because the alleged defamatory statements are substantially true. A cause of action can be dismissed if a plaintiff more or less concedes the essential truth of the allegedly defamatory statement or if there is no basis for a reasonable jury to find that the plaintiff's defamatory statement was not substantially true even as framed in plaintiff's own allegations. *Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir.

1987). However, the NPI Defendants do not concede the truth of the statements; to the contrary, they maintain that the statements were false. Nor is there any basis to conclude that no reasonable jury could find them to be false. For these reasons, Plaintiffs' motion to dismiss Defendants' defamation *per se* counterclaim is denied.

### Trade Libel

Plaintiffs' motion to dismiss the NPI Defendants' claim for trade libel is denied for the same reasons dismissal of the defamation *per se* claim is denied. Plaintiffs contend that dismissal of the trade libel claim is warranted because privileges exist and the statements are true when judged in their proper context. For the reasons stated above, finding a privilege and determining the proper context in which to judge the statements require a factual inquiry that is improper in determining the legal sufficiency of a claim. Therefore, Plaintiffs' motion to dismiss the NPI Defendants' claim for trade libel is denied.

### Violation of the Illinois Deceptive Trade Practices Act

Plaintiffs' motion to dismiss the NPI Defendants' claim for trade disparagement in violation of the Illinois Deceptive Trade Practices Act ("IDTPA") is denied for the same reasons stated above. Section 2(8) of the IDTPA makes it a deceptive practice to "disparage the goods, services, business of another by false or misleading representation of fact." 815 ILCS 502/2(8). The NPI Defendants state plainly that Plaintiffs made false statements that the Urine Gone™ product contained no enzymes, which disparaged their product; Plaintiffs contend these statements considered in context are true. Once again, this requires a factual inquiry that is improper at the pleadings stage. Therefore, Plaintiffs' motion to dismiss the NPI Defendants' counterclaim for violation of the IDTPA is denied.

*Maintenance*

The NPI Defendants allege Plaintiffs committed the tort of maintenance by providing the class action lawyers with documents and misleading information, causing the lawyers to bring suit against them. An action for maintenance is rarely pled in modern times, and the law on the tort is not clear. *Weigel Broadcasting v. Topel*, No. 83 C 7921 1985 WL 2360, at *6 (N.D. Ill. Aug. 21, 1985) (*Weigel*), *quoting Golden Commissary Corp. v. Shipley*, 157 A. 2d 810, 814 (D.C. 1960). Maintenance is akin to an action for malicious prosecution. *Weigel*, 1985 WL 2360, at *6. However, there are differences. For example, intervention or an unwarranted defense of an action may give rise to the tort of maintenance. *Weigel*, 1985 WL 2360, at *6. Additionally, maintenance "reaches the person who instigates, rather than directly participates in, another party's intermeddling in the proceedings." *Weigel*, 1985 WL 2360, at *6. An important element of malicious prosecution that is present in the tort of maintenance is the alleged intermeddling must be without merit. *Weigel*, 1985 WL 2360, at *6. In *Weigel*, the plaintiff's maintenance claim was dismissed because the plaintiff failed to allege its success in proceedings brought against it by the Federal Communications Commission. *Weigel*, 1985 WL 2360, at *6. However, at the pleadings stage, a complainant is not required to demonstrate all the elements of a claim. *See Swierkiewicz*, 534 U.S. at 511. Here, the NPI Defendants have sufficiently stated a cause of action for the tort of maintenance. Therefore, Plaintiffs' motion to dismiss this claim is denied.

*Conspiracy*

The NPI Defendants allege that Counter-Defendants Medallion, Kroeger, Ghai and Envera conspired to create and disseminate false and misleading statements regarding the Urine Gone™ product. In order to state a claim for civil conspiracy, a plaintiff must allege both an agreement between two or more parties and an act in furtherance of the agreement. *McDonagh v. Bergan*, No. 03 C 1465, 2003 WL 21798735, at *5 (N.D. Ill. July 25, 2003). The NPI Defendants allege that Envera was aware of, actively participated in, encouraged, and may have shared the expenses of Medallion's activities. Also, the NPI Defendants allege that the conspiracy included the ordering, paying, and disseminating of inaccurate test results; the decision to contact the FTC, the class action lawyers, and the media regarding the Urine Gone™ product; and to instigate a class action suit against them. Since these pleadings show an agreement between two or more parties and are sufficient to state claims for defamation *per se*, trade libel, violation of the IDTPA, and maintenance, the NPI Defendants have sufficiently stated a claim for conspiracy. *See, e.g., Thermodyne Food Serv. Prods. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) (holding that dismissal of the plaintiff's claim of conspiracy of tortious interference is not warranted because the tortious interference claim remained in the action and plaintiffs added a third party to the conspiracy claim). Therefore, Plaintiffs' motion to dismiss the NPI Defendants' counterclaim of conspiracy is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss all of the NPI Defendants' counterclaims is denied.

Dated: March 29, 2007

JOHN W. DARRAH
United States District Court Judge