## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MEDALLION PRODUCTS, INC.,<br>ENVERA, LLC, and PERFORMANCE<br>CHEMICALS,<br><br>    Plaintiffs-Counterclaim Defendants,<br><br>           v.<br><br>H.C.T.V., INC.,<br>PLYMOUTH DIRECT, INC.,<br>HARRIET CARTER GIFTS, INC.,<br>NATURE'S PILLOWS, INC.,<br>DIRECT RESPONSE, INC.,<br>MEDIA ENTERPRISES II, INC., d/b/a MEDIA<br>ENTERPRISES, INC.,<br>BILL McALISTER, BRAD SPECTER,<br>STEVE SILBIGER,<br>INNOVATIVE CHEMICALS CORPORATION,<br>WOODRIDGE SPECIALTY PRODUCTS<br>CORPORATION, JAMES TIMLIN<br>and THE BROADCAST ARTS GROUP, INC.<br><br>    Defendants-Counterclaim Plaintiffs, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 06 C 2597<br><br>Judge John W. Darrah<br><br>Magistrate Judge Geraldine<br>Soat Brown |

## DEFENDANT THE BROADCAST ARTS GROUP INC.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Plaintiffs are Illinois parties who allege that one of them (Medallion) contracted with Pennsylvania entities for the supply of a formula sold through the internet, direct television advertising, and at retail. Those purchase order agreements were struck wholly in Pennsylvania and Illinois. Ten months into the case, plaintiffs amended their Complaint to add claims against a Florida company, The Broadcast Arts Group, Inc. ("Broadcast Arts"), and against New York companies.

46160

The new Florida defendant, Broadcast Arts, now moves to dismiss for lack of personal jurisdiction. Plaintiffs allege no contacts with Broadcast Arts anywhere but in Florida. Plaintiffs allege no presence by Broadcast Arts in Illinois. Accordingly, Broadcast Arts lacks sufficient minimum contacts with Illinois to support a finding of jurisdiction, and any assertion of Illinois jurisdiction over Broadcast Arts would violate due process.

## I.     Facts Relevant to the Jurisdictional Analysis

Plaintiffs allege in paragraph 3 of the Third Amended Complaint that Broadcast Arts "does business in Illinois" and "has committed tortious acts complained of in Illinois." Third Amended Complaint at ¶ 3. These statements, however, are wholly conclusory. They are not supported by allegations of specific facts. There is no allegation in the pleading of any contact by Broadcast Arts with the State of Illinois: no office, no visits, no contract with an Illinois resident, no sales, and no other activity.

The Third Amended Complaint's only reference to Illinois in connection with Broadcast Arts alleges that the forum came to the defendant, rather than vice versa: "When Broadcast Arts was ready to begin shooting in January 2005, Medallion's Monica Kroeger and Performance's Joe Coligado *traveled to Deerfield Beach, Florida* to attend the first two days of shooting with McAlister and Silbiger." Id. at ¶ 48 (emphasis added).

These Illinois residents – the plaintiffs – did not visit Florida in connection with a contract between them and Broadcast Arts. Plaintiffs had no contract with Broadcast Arts. As stated in the attached Declaration from Broadcast Arts' principal, John Miller, the Production Agreement by which Broadcast Arts filmed the infomercial was solely between Broadcast Arts and the Pennsylvania corporate defendants to this action. These defendants, not the plaintiffs, paid Broadcast Arts for the infomercial. See Declaration of John Miller, attached hereto as Exhibit 1, at ¶¶ 12-14. Broadcast Arts' contract, attached to Mr. Miller's declaration as Exhibit

-2-

46160

A, was performed entirely in Florida and is governed by Florida law. See id. at ¶ 12 and Exh. A thereto.

Plaintiffs' failure to allege any contacts by Broadcast Arts with Illinois is consistent with the facts set forth in Mr. Miller's Declaration.[1] As Mr. Miller states, Broadcast Arts is a company organized and existing under the laws of the State of Florida, with a principal place of business in Deerfield Beach, Florida. See id. at ¶ 2. (Plaintiffs concede these points in the Third Amended Complaint at ¶22.) Broadcast Arts has no employees or offices in Illinois. Id. at ¶¶ 5, 8. Broadcast Arts does not sell any goods or services directly to Illinois customers. Id. at ¶ 10. None of Broadcast Arts' shareholders or directors are Illinois residents. Id. at ¶¶ 3, 4. Broadcast Arts has no telephone listings in Illinois, no bank accounts in Illinois, and otherwise owns no property in Illinois. Id. at ¶¶ 6, 7, and 9.

Broadcast Arts' involvement with the facts giving rise to this litigation is limited to its filming of the infomercial alleged at paragraphs 46-51 and 91-93 of the Third Amended Complaint. This does not establish contacts with Illinois: Mr. Miller's attached Declaration states that "[t]he Infomercial was filmed entirely in the State of Florida. At no time, in connection with the Infomercial, did any Broadcast Arts employee travel to Illinois." Id. at ¶ 11.

While Broadcast Arts does receive a royalty percentage for sales of the product, it plays no role in the making of those sales, which are controlled entirely by the Pennsylvania defendants. Id. at ¶ 18. Nor does Broadcast Arts play any role in the placement of the infomercial; as Mr. Miller states in his attached Declaration, once Broadcast Arts finished filming the infomercial in Florida, it relinquished any control over it. Broadcast Arts sends the

---

[1] "When deciding whether the plaintiff has made a necessary showing, a court can look to affidavits and exhibits submitted by each party." Abarca v. Manheim Services Corp., No. 05-3873, 2006 WL 850893, at *2 (N.D. Ill. Mar. 24, 2006) (Darrah, J.).

completed infomercial not to any party in this case, and not to Illinois, but to a third party located in Montana, called North Country Duplication, Inc., which thereafter is solely responsible for the infomercial's placement. Id. at ¶ 15. Broadcast Arts' relationship with North Country also has nothing to do with Illinois: as Mr. Miller states, the relationship was "concluded between the two parties in, respectively, Florida and Montana." Id. at ¶ 16.

Thus, after filming the infomercial in Florida and sending it to Montana, Broadcast Arts had "no further connection with the Infomercial." Id. at ¶ 17. Broadcast Arts' role in the product after filming is wholly passive: "Other than receiving royalties, Broadcast Arts is not involved in any manner with the Urine Gone® product. Broadcast Arts plays no role in the decisions or the execution of any decisions regarding the product, including where to sell the product." Id. at ¶ 18.

## II.     The Jurisdictional Standard

"Personal jurisdiction . . . is an essential element of the jurisdiction of the district court, without which the court is powerless to proceed to adjudication." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (internal quotes and cites omitted). Plaintiffs bear the burden of providing sufficient evidence that personal jurisdiction exists. Griffith v. Wood Bros., No. 04-3118, 2004 WL 2418296 (N.D. Ill. Oct. 27, 2004). "Each defendant's contacts with the forum must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).

The jurisdictional allegations in a complaint are not absolute. Any presumption as to the truth of well-pleaded allegations evaporates upon the submission of contrary evidence by the defendant contesting personal jurisdiction. See Campbell v. Mills, 634 N.E.2d 41, 43-44 (Ill. App. Ct. 1994). The Court must accept as true any facts in the defendant's affidavits that are unrefuted by the plaintiffs. See Interlease Aviation Investors II v. Vanguard Airlines, Inc., 262

46160

F. Supp. 2d 898, 904 n.3 (N.D. Ill. 2003) (accepting the statements in the defendants'

declarations as true because the plaintiffs' citation to the complaint in response was not

sufficient).

Here, not only are the Complaint's jurisdictional allegations about Broadcast Arts

deficient on their face, but the plaintiffs cannot refute the additional facts set forth in Mr. Miller's

declaration. No facts, either within or extrinsic to the Complaint, support this Court's exercise of

personal jurisdiction over Broadcast Arts.

## III.    The Court Does Not Have Personal Jurisdiction Over Broadcast Arts

### A.    There Is No General Jurisdiction in Illinois over Broadcast Arts

"General jurisdiction . . . is permitted only where the defendant has continuous

and systematic general business contacts with the forum state." RAR, Inc. v. Turner Diesel Ltd.,

107 F.3d 1272, 1265 (7th Cir. 1997). In order to have general jurisdiction, the business activities

of the defendant cannot be inadvertent, trivial or sporadic; they must be intentional, substantial

and continuous. See Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892 F.2d 566,

570 (7th Cir. 1989).

There is no allegation in the Third Amended Complaint that Broadcast Arts has

continuous and systematic general business contacts with Illinois. Mr. Miller's Declaration

confirms the absence of such contacts. Accordingly, there is no basis for finding general

jurisdiction over Broadcast Arts. This requires plaintiffs to do that which they cannot: prove

specific jurisdiction.

### B.    There Is No Specific Jurisdiction in Illinois over Broadcast Arts

#### 1.    Broadcast Arts Does Not Have Minimum Contacts with Illinois.

Specific jurisdiction over a defendant must arise out of or be related to the

defendant's contacts with the forum. See RAR, 107 F.3d at 1277, *quoting* Helicopteros

-5-

Nacionales de Colombia, SA v. Hall, 466 U.S. 408 (1984). Specific jurisdiction requires a

determination that Broadcast Arts has "purposefully established minimum contacts within

[Illinois] and whether those contacts would make personal jurisdiction fair and reasonable under

the circumstances." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Broadcast Arts

must have "purposefully availed itself of the privilege of conducting business within [Illinois],

invoking the benefits and protections of its laws, such that it would reasonably anticipate being

haled into court here." Asahi-Metal Indus. Co. v. Superior Court, 480 U.S. 102, 109 (1987).

The United States Court of Appeals for the Seventh Circuit has stressed that the "reasonably

anticipate" prong is "crucial to the minimum contacts analysis." RAR, 107 F.3d at 1277.

     Additionally, plaintiffs must establish that haling Broadcast Arts into Illinois

court is consistent with the Fourteenth Amendment's due process clause. See Calder, 465 U.S.

at 787; LFG, LLC v. Zapata Corp., 78 F. Supp. 2d 731, 734 (N.D. Ill. 1999).

     The Third Amended Complaint fails on both grounds. Plaintiffs allege no

contacts at all by Broadcast Arts with Illinois, let alone any which support a finding of

purposeful availment. Mr. Miller's Declaration confirms that Broadcast Arts had no contacts

with Illinois with respect to this litigation (or anything else). Plaintiffs would appear to believe

that when they traveled to Florida to meet with Broadcast Arts, in what is the only alleged

contact they had with this Florida defendant, they somehow brought Illinois jurisdiction along

with them and tagged Broadcast Arts with it. Jurisdiction, however, depends upon the

defendant's contact with the forum, not the plaintiffs'. See Keeton v. Hustler Magazine Inc., 465

U.S. 770, 775-776 (1984); Purdue Research Found. v. Sanofi-Synthelabo S.A., 338 F.3d 773,

784 (7th Cir. 2003) ("the unilateral activity of parties other than the non-resident defendant

-6-

46160

cannot satisfy the requirement of the defendants' contacts with the forum state" (internal quotes and cite omitted)).

On this record, the Complaint fails to allege minimum contact and fails to pass Constitutional muster. Broadcast Arts could not "reasonably" expect that it would be haled into Illinois court after Illinois residents appeared at a video shoot that Broadcast Arts performed in Florida for its Pennsylvania customers. Broadcast Arts could not "reasonably" expect that after it turned over control of the video to a Montana company, and had no further active involvement with the product, it would be haled into Illinois court simply because the commercial was shown there. "Potential defendants should have some control over – and certainly should not be surprised by – the jurisdictional consequences of their actions." RAR, 107 F.3d at 1278.

2.     The "Effects" Test Is Insufficient on These Facts to Support a Finding of Personal Jurisdiction in Illinois

Plaintiffs concede Broadcast Arts' lack of direct contacts with Illinois. They instead focus on the ephemeral, arguing that Broadcast Arts should be hauled into a state it never entered, in a suit brought by commercial parties with whom it never contracted, based on the purported "effects" in Illinois of Broadcast Arts' actions.

In support of these purported "effects," plaintiffs have previously relied on Janmark v. Reid, 132 F.3d 1200, 1202 (7th Cir. 1997). See Plaintiffs' Reply in Support of their Motion for Leave to File Third Amended Complaint. Janmark, however, never uses the term "effects." It is instead confined to a particular fact pattern that is not alleged in the Complaint and that is expressly disproved by Mr. Miller's Declaration.

Janmark is to be applied cautiously. Although it remains law in this Circuit, it has been subject to unanimous criticism everywhere else. IMO Indus. Inc v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (collecting cases, rejecting Janmark, and noting that the First, Fourth,

-7-

Fifth, Eighth, Ninth, and Tenth Circuits all adopt a standard contrary to <u>Janmark</u>); <u>see also</u> <u>Clearclad Coatings Inc. v. Xontal, Ltd.</u>, No. 98-7199, 1999 WL 652030, at *21 (N.D. Ill. Aug. 20, 1999) (noting that "every other circuit to decide the issue has a reached a conclusion at odds with <u>Janmark</u>," but applying <u>Janmark</u> because the situation was factually indistinguishable). The Seventh Circuit has not cited <u>Janmark's</u> "effects test" holding since this criticism.

      <u>Janmark</u> is easily distinguishable here. To begin, <u>Janmark</u> must be read in the context of the United States Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S. 783 (1984), which articulates the circumstances in which the "effects test" may serve as a jurisdictional basis over foreign tortfeasors. <u>See</u> <u>Caterpillar Inc. v. Miskin Scraper Works, Inc.</u>, 256 F. Supp. 2d 849, 852 (C.D. Ill. 2003) (referring to "the primacy of the Supreme Court's teaching in <u>Calder</u> that personal jurisdiction depends upon there being some intentional and purposeful tortious conduct outside the forum state calculated to cause injury in the forum state"). The Seventh Circuit recognized one year later that the "effects" test in <u>Calder</u> is not a substitute for the minimum contacts and purposeful availment inquiries required by the Fourteenth Amendment. It is, instead, a framework to guide the assessment of the defendant's relevant contacts with the forum. <u>See</u> <u>Wallace v. Herron</u>, 778 F.2d 391, 395 (7th Cir. 1985).

      In <u>Calder</u>, the Supreme Court examined whether a California court could exercise jurisdiction over Florida defendants in a libel action. 465 U.S. at 790. The defendants wrote an article about the California activities of a California resident, using California sources. <u>Id.</u> at 789. They published their article in a periodical whose largest circulation was in California, and the plaintiff, a California resident, was injured in California. <u>Id.</u>

      On these facts, the Court noted that the <u>Calder</u> defendants had not been sued for "mere untargeted negligence." <u>Id.</u> Their activity was specifically directed at California. The

-8-

authors' actions were intentional. They knew their article was "expressly aimed" at a California resident and that any injury to her would be felt in California. Id. Furthermore, they were the "primary participants" in the wrong directed to California. They wrote the article that caused the harm.

These factors distinguish the Janmark defendants from Broadcast Arts. See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994) (determining that injury was felt in the forum *and* that the defendant had entered the state in some fashion, satisfying jurisdiction); Jackson v. California Newspapers P'ship, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005) (distinguishing Janmark and Indianapolis Colts, noting that the defendants in those cases had "explicitly directed" their torts at the forum state, and therefore concluding that it could not exercise personal jurisdiction over the defendants). Three differences between the present case and Calder/Janmark stand out:

*First*, Illinois was not the specific target of Broadcast Arts' Florida-filmed infomercial. As this Court has held, the effects test requires specific targeting of Illinois: "The effects doctrine allows for a finding of personal jurisdiction if the defendant's intentional tortious actions were ***expressly aimed at the forum state*** and caused harm to the plaintiff in the forum state of which the defendant knows is likely to be suffered." U.S. Tsubaki, Inc. v. Indus. Research Team, No. 00-4447, 2001 WL 99696, at *3 (N.D. Ill. Feb. 1, 2001) (Darrah, J.); (emphasis added).

Broadcast Arts, unlike the defendants in Calder and Indianapolis Colts, did not direct its activities at the forum. Broadcast Arts did not aim anywhere outside of Florida: it produced an infomercial in Florida, and sent it to a company in Montana which arranged for the infomercial's broadcast. That takes this case wholly out of the Janmark line.

-9-

*Second*, Broadcast Arts was not an active participant in the process by which the infomercial was played, and the product then sold, in Illinois. By the time that the infomercial later found its way onto Illinois airwaves, Broadcast Arts was long removed from any control over it – wholly different from the <u>Calder</u> defendants who, as noted above, were the only players and who, in that sole role, aimed, shot directly into, and hit the plaintiffs in California. Passivity is a basis for denying jurisdiction. See <u>Haggerty Enter., Inc v. Lipan Indus. Co.</u>, No. 00-766, 2001 WL 968592, at \*5 (N.D. Ill. Aug. 23, 2001) (determining there was no jurisdiction over a manufacturer because there was no link between it and Illinois; the products came to Illinois through a distributor); <u>Donmar Inc. v. Swanky Partners, Inc.</u>, No. 02-1482, 2002 WL 1917258, at \*3 (N.D. Ill. Aug, 20, 2002) (defendant's maintenance of a passive website, not specifically aimed at the forum state, did not establish personal jurisdiction).

*Third*, Broadcast Arts was part of a large group of players, rather than being the out-of-state party calling the shots. Courts focus on the number of parties when deciding to apply the effects test. See <u>IMO Indus. Inc.</u>, 155 F.3d at 264 n.6 (noting that unlike a two-party scenario as in <u>Janmark</u>, a defendant's awareness and knowledge of the alleged wrongdoing is less apparent in a three-party scenario). As demonstrated by the year that elapsed before plaintiffs ever thought to add Broadcast Arts to this case, plaintiffs' grievances are with the H.C.T.V. and Nature's Pillows parties to whom plaintiff Medallion once sold. Broadcast Arts, like Medallion, is simply a vendor to the Nature's Pillows and H.C.T.V. defendants.

For all these reasons, <u>Janmark</u> is distinguishable and does not apply to this case.

The multi-party scenario is also relevant to the separate question of due process. When one looks at the entire context of this action, jurisdiction over Broadcast Arts is particularly unreasonable. Broadcast Arts is caught in a jurisdictional horror film, in which the

46160

number of plaintiffs and defendants keeps multiplying from a once-small spore. The germ of this action began with a purchase order/supplier relationship between, respectively, two of the Pennsylvania defendants (Plymouth Direct and Nature's Pillows) as the buyer, and plaintiff Medallion as the seller.

Had those defendants kept buying from Medallion, this action would not exist. When they ceased those purchases, Medallion sued, claiming breach of a purported "exclusivity" contract which discovery has yet to reveal. It is significant that the breach of contract count in what is otherwise plaintiffs' twelve-count complaint is brought only by Medallion, and only against the Pennsylvania parties. See Third Amended Complaint at ¶¶ 158-164.

Medallion then added more and more players to this basic commercial dispute. First, it multiplied the number of plaintiffs, adding Performance and Envera to the tort claims. These extra plaintiffs are identified in the Complaint as Medallion's suppliers. They are not alleged to have had any relationship with Broadcast Arts. Next, plaintiffs named individuals as defendants. Next, they named any company affiliated with Plymouth Direct and Nature's Pillows as defendants.

Adding Broadcast Arts is the latest chapter. Somehow, in what started as a contract action between Medallion and Nature's Pillows, Broadcast Arts finds itself subject to tort claims in Illinois brought by parties with whom it did not deal and whom, as Mr. Miller testifies, two of which it never even knew existed. See Miller Dec., Exh. 1 at ¶ 20. This is the essence of unreasonable, unexpected jurisdiction that pushes far beyond the bounds of due process.

-11-

46160

3. Broadcast Arts' Receipt of Royalties is Not a Sufficient Jurisdictional Basis

Broadcast Arts' receipt of royalties, as a passive participant after filming the

infomercial in Florida, does not support jurisdiction in Illinois. "No case has yet held that

revenue derived from this State is the dispositive variable in resolving whether in personam

jurisdiction may be asserted against a foreign corporation." Pilipauskas v. Yakel, 629 N.E.2d

733, 741 n.3 (Ill. App. Ct. 1994). Instead, for royalty receipts to support a finding of personal

jurisdiction, they must be combined with activity by the defendant in the forum state –

allegations of which are wholly absent in the complaint and expressly denied by Mr. Miller in his

Declaration. "Cases allowing specific personal jurisdiction over a nonresident defendant for the

commission of a tort are limited to instances where there is an additional entrance into the forum

or intentional injury." Donmar Inc., 2002 WL 1917258, at *3.

Broadcast Arts stands in marked contrast to a seller who derives a royalty stream

from sales of its product. As noted above, it is several times removed from that part of the chain.

"A review of the cases in which a defendant's small volume of sales within the forum state

subjected it to the exercise of personal jurisdiction suggests that courts exercise jurisdiction only

where the defendant also engaged in the active solicitation of the business or made direct

advertisements targeting the forum state." Trost v. Bauer, No. 01-2038, 2001 WL 845477, at *7

(N.D. Ill. July 24, 2001). To exercise jurisdiction over Broadcast Arts based on such tenuous

allegations would be in clear disregard of the due process requirements of the Fourteenth

Amendment.

46160

## IV.    Conclusion

Neither general nor specific personal jurisdiction exists in Illinois over Broadcast Arts.  The Third Amended Complaint insofar as it is asserted against it, therefore, must be dismissed.


By:    s/ Steven R. Smith
            One of the Attorneys for Defendant
            The Broadcast Arts Group, Inc.

Date: May 30, 2007

            Steven R. Smith
            William F. Zieske
            BRYAN CAVE LLP
            161 North Clark Street
            Suite 4300
            Chicago, IL  60601
            (312) 602-5000

            Matthew H. Adler
            Fred Alcaro
            PEPPER HAMILTON LLP
            3000 Two Logan Square
            Eighteenth & Arch Streets
            Philadelphia, PA  19103-2799
            (215) 981-4000

46160