IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDALLION PRODUCTS, INC.; ENVERA, LLC; and PERFORMANCE CHEMICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 06 C 2597 |
| WILLIAM McALISTER; BRADLEY P. SPECTER; NATURE'S PILLOWS, INC.; DIRECT RESPONSE, INC., MEDIA ENTERPRISES II, INC. d/b/a MEDIA ENTERPRISES, INC.; PLYMOUTH DIRECT, INC.; HARRIET CARTER GIFTS, INC.; INTERNATIONAL CHEMICAL CORPORATION, d/b/a/ INNOVATIVE CHEMICALS CO.; and JAMES TIMLIN, | ) ) ) ) ) ) ) ) ) ) ) | Judge John W. Darrah |
| Defendants. | ) ) ) | |
| NATURE'S PILLOWS, INC.; DIRECT RESPONSE, INC.; PLYMOUTH DIRECT, INC.; INNOVATIVE CHEMICALS CO.; and JAMES TIMLIN, | ) ) ) ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MEDALLION PRODUCTS, INC.; ENVERA, LLC; MONICA KROEGER; and SHEETAL GHAI, | ) ) ) ) | |
| Counterclaim-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns the pet-stain removal product Urine Gone advertised on

1

television and sold to consumers through internet, catalog and retail outlets. The matter is before the Court upon the parties' cross-motions for summary judgment.

## BACKGROUND

The following basic background facts are taken from Plaintiffs' Fourth Amended Complaint ("Complaint") and the parties' filings of record.[1]

### The Parties

Plaintiff Medallion Products, Inc. ("Medallion") is engaged in the business of designing and marketing consumer products that are initially marketed in television infomercials with follow-up marketing to internet, catalog and retail outlets. Among the products Medallion has sold is a urine and odor removal product. Monica Kroeger and Sheetal Ghai are officers affiliated with Medallion. Plaintiff Performance Chemicals,

---

[1]     As demonstrated by the several motions for summary judgment filed by the several parties, the facts in this case are numerous and involve many parties. In connection with the pending motions for summary judgment, the parties have all filed statements of material facts, and responses to each others' statements of material facts, pursuant to Local Rule 56.1. It would be impracticable and indeed impossible for the Court to attempt to parse through and discuss the parties' voluminous filings and counter-filings (in which the parties set forth different versions of the uncontested facts) to arrive at one recitation of undisputed facts, and the Court will not endeavor to do so. The burden is on the parties moving for summary judgment to demonstrate, with respect to the matters on which they seek judgment, that there is no dispute as to the material facts and that they are entitled to judgment as a matter of law. Therefore, the Court's statement of background facts gleaned from the parties' pleadings and filings is for background purposes and is not intended as a complete statement of undisputed facts. The parties' positions with respect to the materials facts, if relevant to the pending motions and raised by the parties, will be addressed in the pertinent analysis section below.

Inc. ("Performance") manufactures and sells chemical products. Paintiff Envera, LLC ("Envera") provides biochemical, technical, and laboratory services, including the development and testing of biochemical agents.[2]

Defendant Nature's Pillows, Inc. ("NPI") is in the business of finding niche consumer products and bringing them to market through television advertising and retail sales. Defendant Plymouth Direct, Inc. ("Plymouth") is responsible for sales of products directly to consumers through television sales and the internet. NPI, and Defendants Direct Response, Inc. ("Direct") and Media Enterprises ("Media Enterprises") are all marketing companies co-owned by Defendants McAlister and Specter.[3]

Defendant Innovative Chemical Corporation ("ICC") is a business engaged in developing, manufacturing, selling and certifying the accuracy of the content of the chemical products it sells. Defendant James Timlin is owner/chief executive officer of ICC.[4]

Defendant Harriet Carter Gifts, Inc. ("Harriet Carter") is a family-owned business engaged in the retail sale of products by mail-order catalog and on the internet. Among the products sold in its catalogs is Urine Gone, which it purchased for resale from NPI.

---

[2]     When referred to collectively, Medallion, Performance and Envera will be "Plaintiffs."

[3]     Collectively or in groups, NPI, Plymouth, Direct Response, Media Enterprises, McAlister and Specter will be referred to as the "NPI Defendants."

[4]     Collectively, ICC and Timlin are referred to as "ICC" or the "ICC Defendants."

## The Conduct

Sometime in 2004, McAlister of NPI saw a demonstration of a pet-stain removal product on a home-shopping network and concluded that a similar product at a lower price point could be successfully marketed. Medallion, through its President Kroeger, told McAlister Medallion might be able to develop one. Medallion commissioned Performance and Envera to develop such a product: specifically, to develop a formulation of enzymes that would safely interact with and chemically dissolve the organic materials in urine and other organic waste that could be visually demonstrated on television.

By October of 2004, Performance had developed a pet-stain removal product for Medallion, using an enzyme ingredient manufactured by and obtained from Envera, that was demonstrated for NPI and Plymouth. Plymouth and NPI began purchasing the urine removal product from Medallion through a series of written purchase agreements. Plans were made to promote the product through television commercials and infomercials. The NPI Defendants contracted with Broadcast Arts to produce an infomercial.

In December 2004, Direct Response (and H.C.T.V., now dismissed as a defendant in the case) registered the words "Urine Gone" in the federal Patent Office. Direct Response is now the co-holder with Plymouth of the trademark UrineGone®.

Shooting of the Urine Gone infomercial began in February 2005 and began airing on television in March 2005. Plaintiffs participated in the preparation of the infomercial. The infomercial aired on television from March though October 2005. The infomercial included a discussion of the enzyme action of the cleaning solution in the urine removal product and the use of a blacklight to demonstrate the effectiveness of the solution. The

4

infomercial was considered successful, and millions of units were sold to call-in purchasers.

In January 2005, prior to the airing of the infomercial and unbeknownst to Plaintiffs, the NPI Defendants began negotiations with the ICC Defendants to develop and become an alternate supplier to the NPI Defendants of a pet-urine removal product. The ICC Defendants developed such a product, and the NPI defendants began purchasing ICC's product in June 2005, in addition to Plaintiffs' urine removal product. ICC's product, as Medallion's, was called "Urine Gone."

The infomercial discussing the enzyme properties of Medallion's solution continued to air after the NPI Defendants began purchasing and selling the solution obtained from the ICC Defendants. The label on the ICC's product stated that the product was "As Seen On TV."

Plaintiffs obtained a sample of ICC's Urine Gone solution and had it tested. The tests purported to find that the solution manufactured by ICC contained minimal to no enzyme activity.

Plaintiffs contend the Urine Gone product the NPI Defendants purchased from ICC was a counterfeit formulation of the Urine Gone product Medallion supplied to NPI and did not contain a similar solution. Plaintiffs allege the NPI Defendants sold both the real (*i.e.*, Medallion's) Urine Gone formulation and the counterfeit (*i.e.*, ICC's) to consumers through various methods. From March 3, 2005 to October 6, 2005, Medallion shipped units of its urine removal solution to Defendant Harriet Carter pursuant to orders from the NPI Defendants, which Harriet Carter sold to consumers.

5

Plaintiffs allegedly disseminated information to third parties, including the Federal Trade Commission ("FTC"), a Fox News reporter and class-action lawyers, about the ICC Defendants' Urine Gone formulation, including Plaintiffs' claim that ICC's Urine Gone contained no enzymes as represented on the infomercial. The FTC subsequently initiated an inquiry into Urine Gone®, and a class-action lawsuit was brought against the NPI Defendants in the Southern District of New York, alleging the NPI Defendants made false representations about Urine Gone®.

### The Pleadings

Arising from these facts, Plaintiffs have filed a fourteen-count Fourth Amended Complaint for injunctive relief and monetary damages, alleging the following causes of action:

Count I: Unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) against the NPI Defendants and Steven Silbiger (not named as a defendant);

Count II: Unfair trade practices against the NPI Defendants under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/510/1 *et seq.*;

Count III: Consumer fraud against the NPI Defendants;

Count IV: Misappropriation of confidential, proprietary and trade secret information against the NPI and ICC Defendants in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*;

Count V: Breach of contract against the NPI Defendants (brought by Medallion);

Count VI: Fraud in the inducement against the NPI Defendants;

Count VII: "Misappropriation of Plaintiffs' Proprietary Images by Defendants for

6

Use in the Sale of their Counterfeit Product Without License or Authorization" against the NPI and ICC Defendants;

Count VIII: Tortious interference with prospective business advantage against the NPI Defendants;

Count IX: Defamation *per se* against Harriet Carter (brought by Medallion);

Count X: Tortious interference with contract against the ICC Defendants (brought by Medallion);

Count XI: Tortious interference with prospective economic advantage against the ICC Defendants (brought by Medallion);

Count XII: Defamation *per se* by Medallion against the NPI Defendants for conduct by Defendant Specter;

Count XII: Defamation *per se* by Medallion against the NPI Defendants for conduct by Defendant McAlister;

Count XIV: Civil conspiracy against all Defendants.

(Docket No. 305.)

The NPI and ICC Defendants have filed counterclaims against Medallion, Envera, and Third-Party Defendants Monica Kroeger and Sheetal Ghai. (Docket Nos. 346, 358.) The NPI Defendants allege counterclaims for Trade Libel (first claim for relief); Defamation *Per Se* (second claim); Violation of the Illinois Uniform Trade Practices Act (third claim); Maintenance (fourth claim); and Civil Conspiracy (fifth claim). (Docket No. 346.) The ICC Defendants allege counterclaims for Trade libel (first claim); Defamation *per se* (second claim); Civil conspiracy (third claim); Tortious interference

7

with ICC's business relations (fourth claim); and Defamation *per se* by Defendant Timlin (fifth claim). (Docket 358.)

The following motions for summary judgment have been filed:

(1) Motion for Summary Judgment of Defendants Nature's Pillows, Inc.; Direct Response, Inc.; Media Enterprises II, Inc.; William McAlister; Bradley Specter; Plymouth Direct, Inc.; and Harriet Carter Gifts, Inc. (Docket No. 403);

(2) Motion for Summary Judgment of Defendants James Timlin and Innovative Chemicals Corporation (Docket No. 405);

(3) Plaintiffs' Motion for Partial Summary Judgment on Counts I though V and Count VII (Docket No. 408); and

(4) Motion for Summary Judgment of Plaintiffs/Counterclaim-Defendants Medallion Products, Inc.; Envera, LLC; Sheetal Ghai; and Monica Kroeger on the Counterclaims of Nature's Pillows, Inc.; Direct Response, Inc.; Plymouth Direct, Inc.; Innovative Chemicals Corporation; and James Timlin (Docket No. 409).

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is

insufficient to establish a material element of the non-moving party's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The Court will first address the summary judgment motions directed to the claims alleged in Plaintiffs' Complaint.

### Counts I, II and III

The NPI Defendants move for summary judgment on Counts I, II and III of Plaintiffs' Complaint on the basis that Plaintiffs lack standing to bring such claims under the Lanham Act, 15 U.S.C. § 1125(a).[5] To prevail on a false advertising claim under the Lanham Act, a plaintiff must show that: (1) the defendant made a false statement of fact about its product or another's product in a commercial advertisement; (2) the statement deceived or has the tendency to deceive a substantial segment of its audience; (3) the false statement is material in that it is likely to influence purchasing decisions; (4) the

---

[5]    The parties agree that the standing requirements of the false advertising claim under the Lanham Act as alleged in Count I apply to the claims under the Illinois Unfair Trade Practices Act and Consumer Fraud Act alleged in Counts II and III.

defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a loss of goodwill that is associated with its products. *Hot Wax, Inc. v. Turtle Wax*, 191 F.3d 813, 819 (7th Cir. 1999). The Seventh Circuit has held that in order to have standing to allege a false advertising claim under the Lanham Act, "the plaintiff must assert a discernable competitive injury." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) (*Heath*). Thus, the plaintiff must be a competitor of the defendant. *Heath*, 9 F.3d at 575.

The NPI Defendants contend that because there is no dispute that Plaintiffs never sold a pet stain product directly to consumers, Plaintiffs were not in competition with them at the same level of distribution; therefore, Plaintiffs lack standing to assert a claim of false advertising under the Lanham Act as a matter of law.

Plaintiffs do not dispute that they do not sell a pet stain removal product directly to consumers. The evidence shows that Envera sells its enzyme formulation to Performance; Performance sells its solution to Medallion; and Medallion sold its product only to distributors (*i.e.*, to the NPI Defendants and, later, in small amounts to another distributor, Emson). There is no dispute that Plaintiffs do not sell their product directly to consumers or retailers, and they do not directly compete for sales with the NPI Defendants. Plaintiffs contend that they have sustained a competitive injury merely because they sell a pet stain removal product, which is *eventually* sold through retailers and other methods to consumers.

However, courts in this district have found these kinds of facts insufficient to show competitive injury for purposes of establishing standing under the Lanham Act. Instead, courts require the plaintiff to show that it competes at the same level of business as the defendant. *See, e.g., Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 CV 5303, 2006 WL 2873202, at * 5 (N.D. Ill. Oct. 5, 2006) (St. Eve, J.) ("Plaintiffs are not engaged in the same business as Defendants because Plaintiffs are not retailers or manufacturers of pet accessories and clothing. Instead, Plaintiffs develop, acquire, and license 'many kinds of commercial products.' Based on Plaintiffs' allegations, the parties are not engaged in the same business, and thus Plaintiffs cannot assert a discernable competitive injury."); *Goodloe v. Nat'l Wholesale Co., Inc.*, Case No. 03 CV 7176, 2004 WL 1631728, * 12 (N.D. Ill. 2004 ) (Filip, J.) ("[Plaintiff] is directed to the retail market for consumer electronics through sales to consumers . . . , while [Defendant] serves the wholesale market by selling to retailers. Because [Plaintiff] has not alleged any facts indicating that he is a competitor of any of the Defendants, he lacks standing to bring a claim of false advertising under the Lanham Act.")

Here, there is no dispute that Plaintiffs do not compete with the NPI Defendants for the sale of a pet stain removal product to suppliers or retailers; rather, Plaintiffs sell (or sold) to distributors, the NPI Defendants and another distributor, Emson. This is insufficient to show that Plaintiffs compete with the NPI Defendants for sales and have suffered "a discernable competitive injury" as required to show standing to assert a false advertising claim under the Lanham Act. *See Heath; Gail Green; Goodloe.* Even if Plaintiffs could otherwise support their Lanham Act claim against the NPI Defendants,

11

summary judgment is appropriate because Plaintiffs have not shown any actual reliance on the alleged false representations by a customer. *See Heath*, 9 F.3d at 575 ("In order to recover damages for a purported Lanham Act violation, the plaintiff 'must demonstrate that it has been damaged by actual consumer reliance on the misleading statements.'") (citations omitted.) Defendants' motion for summary judgment on Counts I, II and III is therefore granted. Plaintiffs' cross-motion for summary judgment on Counts I through III is denied. Not only do Plaintiffs lack standing to maintain their false advertising claim under the Lanham Act, Plaintiffs make no argument that there are no genuine issues of material facts and that they are entitled to judgment as a matter of law with respect to the required elements of these claims.

## Count IV [6]

In Count IV, Plaintiffs allege that the proprietary pet stain removal formula they developed constitutes a trade secret under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA") and that Defendants misappropriated the trade secret in the following ways:

---

[6]     Although the usual practice in this circuit in federal question cases is to decline to exercise supplemental jurisdiction over state-law claims where all federal claims have been dismissed before trial, in this case, the factors used in determining whether to exercise supplemental jurisdiction – including judicial economy, convenience and fairness – counsel in favor of exercising jurisdiction over the state-law claims, given the extensive proceedings and resources already expended in presenting the state-law claims here. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (citing factors.) Therefore, the Court will exercise supplemental jurisdiction despite the absence of the Lanham Act claim.

a. NPI and McAlister and Plymouth and Silbiger represented to Broadcast Arts at the time that the[y] entered into a contract with Broadcast Arts that they owned all of the intellectual property rights in the product, when in fact they did not own the secret formula of the Plaintiffs or any other then existing intellectual property rights in the product;

b. ICC represented to NPI that it had reverse engineered the Medallion secret formula and that its own formula had all of the attributes and more than the Medallion product had, when in fact it had not reverse engineered or otherwise been able to duplicate the formula or its performance characteristics;

c. NPI, Plymouth, and ICC have all used the banner headline on the bottles and packaging of Urine Gone exclaiming that the solution inside the bottle made by ICC was the same product made pursuant to Medallion's secret formula and "As Seen On TV."

(Complaint, ¶162.)

Defendants move for summary judgment on Count IV because Plaintiffs have produced no evidence to show that they misappropriated or used Plaintiffs' trade secret. Defendants are entitled to summary judgment on this claim.

In order to make out a claim under the ITSA, "plaintiffs must plead and prove that '(1) the information was a trade secret; (2) defendant[s] misappropriated it; and (3) defendant[s] used the information in [their] business.'" *Papa John's Int'l., Inc. v. Rezko*, 446 F. Supp.2d 801, 810 (N.D. Ill. 2006) (citing *Kim v. Dawn Food Products*, 2006 WL 695257 *3 (N.D. Ill. 2006)).

Defendants assert there is no evidence that Defendants were ever in possession of Plaintiffs' proprietary pet stain removal formula. Plaintiffs do not dispute this assertion. In fact, "Plaintiffs . . . concede that they have succeeded in controlling [their] secrets such that no Defendant actually has learned of any secret." (Pltf. Mem. at 11.) No reasonable jury could conclude in light of this concession that Defendants "misappropriated" Plaintiffs' trade secret or used the information in their business.

In their opposition brief and in support of their own motion for summary judgment on this count, Plaintiffs argue that Defendants misrepresented that they owned the Medallion product and falsely represented in the infomercial that the product was the Medallion product without pointing to any factual support for this assertion. Moreover, Plaintiffs cite no authority supporting the proposition that such allegations of "misrepresentation of ownership" support a claim for misappropriation of a *trade secret*. Indeed, Plaintiffs here cite no cases at all.

A claim of misappropriation of trade secret under the ITSA requires that a trade secret be misappropriated and used by Defendants in their business. It is undisputed that Defendants did not actually possess Plaintiffs' secret formula for Plaintiffs' version of Urine Gone. Therefore, even viewing the facts in the light most favorable to Plaintiffs, Plaintiffs' claim under the ITSA alleged in Count IV fails. Accordingly, Defendants' motion for summary judgment on Count IV is granted; Plaintiffs' cross-motion for summary judgment on Count IV is denied.

## Count V

Count V of the Complaint alleges that Medallion and the NPI Defendants "had an agreement that [Medallion] would sell its proprietary formulation exclusively to McAlister and Silbiger and companies designated by them . . . and that such companies, NPI and Plymouth would purchase the proprietary formulation exclusively from Medallion to all markets to which the product was sold through the use of the spot TV commercial or reference to the commercial, 'As Seen On TV.'" (Complaint, ¶ 166.) Medallion alleges the NPI Defendants breached this agreement by "wrongfully ceas[ing]

purchasing their product requirements from Medallion and instead purchas[ing] approximately 3,000,000 units of product from ICC." (Complt., ¶ 170.)

Defendants contend these allegations purport to assert that the parties had a "requirements" contract in which the NPI Defendants agreed to purchase all of their needs for the Urine Gone solution from Plaintiffs. Defendants argue the claim fails as matter of law because there is no writing evidencing such a requirements contract as required by the statute of frauds.

Plaintiffs do not dispute that they allege a requirements contract.

Under Illinois law:

> The writing used to satisfy the statute of frauds must show that there has been an agreement about the essential terms of the contract, demonstrating a 'meeting of the minds.' Moreover, a requirements contract for the sale of goods is not exempt from the statute of frauds. As such a requirements contract must specify a quantity. In order to meet this requisite of the statute of frauds, the writing need not state a numerical quantity, but rather, *there must be some writing indicating that the quantity to be delivered under the contract is a party's requirements or output.* Moreover, purchase orders containing quantity terms are insufficient in meeting the statute of frauds' quantity requisite for a requirements contract entered into [because they] do not indicate that quantity is to be measured by requirements. In order to qualify as a requirements contract, the contract must also provide or imply that the buyer will purchase exclusively from the seller.

*Cohabaco Cigar Co. v. United States Tobacco Co.*, Case No. 98 CV 1580, 1999 WL 988805, at *5 (N.D. Ill. Oct. 22, 1999) (emphasis added) (citations omitted) (*Cohabaco*).

In their brief, Plaintiffs do not point to any specific writing satisfying the statute of frauds' requirements with respect to a requirements contract. Plaintiffs simply state: "Not only is there sufficient written evidence of a contract, as outlined below, but the testimony in this case removes it from the provisions of the statute of frauds, because

15

Mr. Silbiger had admitted that the agreement exists and that he and his joint venturer agreed to market exclusively the Medallion product for as long as they saw fit to actively market it." (Pltf. Opp. at 15.) However, Plaintiffs do not refer to any specific evidence in the record of a writing or writings to support this assertion but, instead, offer the following broad, generalized statements:

> Plaintiffs'[sic] extensively cite to written evidence of the agreement in response to Defendants' Rule 56.1 statement, 1) the missing memorandum of the agreement that NPI failed to produce and Medallion was unable to recover from its former email server, which is the subject of Plaintiffs' motion for sanctions, and as to which Plaintiffs believe Defendants' pleading should be stricken and, at a minimum, an adverse inference can be drawn; 2) the stream of emails between Medallion and Plymouth/Harriet Carter regarding Medallion's contribution to the bottling, labeling, and packaging and to its role in furnishing all of the materials and product used at the taping of the commercial at BAGTV in Florida; 3) the admission by Plymouth that it honored the agreement and bought exclusively from Medallion; 4) the early purchase orders from NPI; 5) NPI's insistence that Medallion name NPI as an additional insurer on its policy of insurance; 6) McAlister's statements to Medallion that Medallion was required to keep the formula and the existence of the product top secret until the TV commercial had been rolled out; 7) Medallion's own statements that it recognized its obligation to use its product only for sale as 'Urine Gone'; 8) the specific evidence of the terms of the sales as set out in the invoices, purchase orders, and bills of lading. In addition, under the UCC, usage in trade is admissible as evidence and Ghai testified that such oral agreements of two-way exclusivity are frequent in the direct response business . . . .

(Pltf. Opp. at 16.)

Plaintiffs' response is insufficient to withstand summary judgment, much less establish that Plaintiffs are entitled to summary judgment on Count V. As the Seventh Circuit has recognized, it is not the burden of the Court to scour the record to find evidence necessary to defeat a motion for summary judgment. The burden is on the non-moving party to point to such evidence in the record. *See Estate of Moreland v. Dieter,*

395 F.3d 747, 759 (7th Cir. 2005); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

None of the litany of conclusions listed in Plaintiffs' response (for which Plaintiffs fail to provide the Court with specific corresponding citations to the record) constitutes a writing indicating that the quantity to be delivered under the party's contract is the NPI Defendants' requirements or output. The purchase orders by which the NPI Defendants purchased urine removal solution from Medallion are not sufficient evidence to satisfy the statute of frauds. *See Cohabaco Cigar Co.*, 1999 WL 988805.

Furthermore, even assuming a sufficient writing existed, Plaintiffs' own admission that the parties' agreement was that the NPI Defendants would market "Medallion's product for as long as they saw fit" clearly evidences a contract that is terminable at will by the NPI Defendants. (*See* Pltf. Opp. at 15) (Defendants argue that an agreement without a specified duration is terminable at will. This is true . . . ."). Thus, the NPI Defendants' decision to discontinue marketing Medallion's product cannot constitute breach of contract. *See Jespersen v. Minnesota Mining and Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1998) ("[T]he rule that contracts of indefinite duration are terminable at will has long been followed" in Illinois.); *Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp.*, Case No. 01C9271, 2002 WL 31207324, *2 (N.D.Ill. Oct. 2, 2002) (dismissing contract claim for failing to plead durational term, finding alleged contract terminable at will).

As Plaintiffs have not pointed to any evidence of writings indicating that the parties agreed that Plaintiffs would supply all of Defendants' requirements or that

Defendants would purchase exclusively from Plaintiffs, there is no breach by the NPI Defendants of the alleged terminable at-will agreement. Plaintiffs therefore have failed to demonstrate that a triable issue exists on their breach of contract claim, and the NPI Defendants are entitled to summary judgment on Count V. Accordingly, the NPI Defendants' motion for summary judgment as to Count V is granted; Plaintiffs' cross-motion for summary judgment on Count V is denied.

### Count VI

Next, the NPI Defendants move for summary judgment on Plaintiffs' claim of fraudulent inducement. Plaintiffs allege that the NPI Defendants repeatedly represented to Plaintiffs that the Defendants desired to use Plaintiffs exclusively for the supply of Urine Gone to retail customers and committed other acts to induce Plaintiffs to believe that they had exclusive supplier agreement, which prevented Plaintiffs from offering the product through other channels of distribution prior to the time the Urine Gone name was well-established. Plaintiffs allege Defendants' representations were false and that they relied on them to their detriment. (Complt., Count VI.)

The elements of fraudulent inducement are: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1341 (7th Cir. 1992).

Defendants contend Plaintiffs cannot establish these elements: first, Plaintiffs cannot point to evidence of any false representations made to them other than Plaintiffs'

own allegations; and second, Plaintiffs cannot show clear and convincing evidence of any detrimental reliance or injury. According to Defendants, Plaintiffs' business transactions with the NPI Defendants were *profitable* for Plaintiffs because Plaintiffs admitted they made a profit on the sales of Urine Gone made to Defendants. Further, there is no evidence that Plaintiffs turned away any other business or suffered any other kinds of losses (such as ramping up of staff or investing in unsold inventory or other costs) as a result of the alleged misrepresentations by Defendants.

In their opposition brief, Plaintiffs assert that misrepresentations were made. They cite deposition testimony by Kroeger (of Medallion) and Cligado (of Performance) that they recall being told by McAlister and Silbiger that Medallion would be the exclusive supplier of the product when it was sold in retail stores. (Pltf. Opp. at 17, PSUF ¶ 11.) In addition, Plaintiffs state (without citation to any evidence in the record) that they suffered damages of the lost revenue that would have been associated with retail sales. (Pltf. Opp. at 18.)

Even assuming Kroeger's and Cligado's statements are sufficient to create a triable issue that false representations that Medallion would be the exclusive supplier were made, *see, e.g., Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir.2003) (evidence presented in a "self-serving" affidavit or deposition is enough to deny a summary judgment motion provided it meets the usual requirements for evidence at summary-judgment stage), Plaintiffs do not point to any evidence demonstrating that they detrimentally relied on the alleged false representations, including evidence that Defendants' alleged misrepresentations caused Plaintiffs to take any action or incur any

19

costs that they would not have taken or incurred in the absence of the alleged fraudulent representations.

In the absence of evidence of such actions, or detrimental reliance, by Plaintiffs, Plaintiffs' claim of fraudulent inducement cannot proceed. Defendants' motion for summary judgment is therefore granted as to Count VI.

## Count VII

In Count VII, Plaintiffs allege a common-law claim for "Misappropriation of Plaintiffs' Proprietary Images by Defendants for Use in the Sale of Their Counterfeit Product Without License or Other Authorization." (Complt., Count VII.) Plaintiffs claim they participated in the production of the infomercial and product label, which they authorized Defendants to use exclusively for the marketing of Medallion's urine removal product and that Defendants made unauthorized use "of [their] infomercial and label, the images of the Medallion product created therein, the performance characteristics of the Medallion product as displayed therein, or the laboratory tests conducted on the Medallion product in the marketing of another product not supplied by Medallion." (Complt., ¶ 181.) Plaintiffs claim they were damaged, and Defendants were unjustly enriched by Defendants' unauthorized use. (Complt., ¶¶ 182, 183.)

The ICC Defendants contend: (1) to the extent the claim alleges Plaintiffs had trade secret information stolen in the course of the alleged misappropriations of their proprietary images, such claims are preempted as a matter of law by the ITSA, which abolishes all claims for misappropriation of trade secrets arising under any other theory of law; and (2) no cognizable tort exists for "Misappropriation of Plaintiffs' Proprietary

Images." The ICC Defendants further argue that even if the claim alleged in Count VII could be read as one for conversion of intellectual property, such a claim fails because the evidence shows that Plaintiffs have no intellectual property ownership rights that could have been misappropriated by Defendants.

Plaintiffs oppose summary judgment on Count VII on the ground that, although expressly labeled "Misappropriation of Plaintiffs' Proprietary Images by Defendants for Use in the Sale of Their Counterfeit Product Without License or Other Authorization," the claim alleged is actually a claim for unjust enrichment or *quantum meruit.* Plaintiffs rely for this assertion on this Court's Memorandum Opinion and Order, nearly two years ago, in which the Court denied a motion by Defendants to dismiss Count VII of Plaintiffs' Second Amended Complaint, which contained the same allegations to the current Count VII. In denying the motion to dismiss, the Court stated that "Count VII alleges a claim for unjust enrichment based on the NPI Defendants' alleged misappropriation of the Plaintiffs' research, product development, contribution, and substantive content to the production of the infomercial" and held that Plaintiffs were not required at the pleadings stage to plead all facts in support of their claim. *Medallion Products, Inc. v. H.C.T.V.*, Case No. 06 cv 2597, 2006 WL 3065344, at *9 (N.D. Ill. Oct. 24, 2006). According to Plaintiffs, the Court "expressly excluded any reference to trade secrets as being any part of this claim and that is the law of the case."

Plaintiffs are incorrect. It is Plaintiffs' obligation to plead and prove their claims. After two years of litigation, Plaintiffs have now had ample opportunity to develop facts through discovery supporting Count VII. Plaintiffs presently state that Count VII "is

21

based on the unauthorized and uncompensated use of images and claims regarding Plaintiffs' proprietary formula and the representation of the formula's enzyme cleaning properties in the infomercials." (Pltfs. Mem. at 6.) Plaintiffs cite no authority recognizing a quasi-contractual theory of recovery (either unjust enrichment or *quantum meruit*), or facts, supporting this claim.

Count VII sets out a claim for misappropriation of trade secret information and/or proprietary images. As such, the claim is preempted by the ITSA as a matter of law. *See AutoMed Techs., Inc. v. Eller,* 160 F.Supp.2d 915, 921 (N.D. Ill. 2001) (*AutoMed*) ("The ITSA is the exclusive remedy under Illinois law for misappropriation of trade secrets. . . . The statute explicitly abolishes all common law causes of action, except breach of contract, predicated on a trade secret theory.")[7] In *AutoMed,* the court found an alleged "conversion" claim to be "just another way of charging that defendants took [plaintiff's] secret information"and thus held the ITSA was the plaintiff's exclusive remedy pursuant to 765 ILCS 1065/8(a). *AutoMed,* 160 F. Supp.2d at 922. The ITSA is the exclusive remedy for the claim. *See AutoMed.*

Defendants are awarded summary judgment on Count VII. Plaintiffs' cross-motion for summary judgment on Count VII is denied.

### Count VIII

In Count VIII, Plaintiffs claim that the NPI Defendants tortiously interfered with

---

[7]     The ITSA,765 ILCS 1065/8(a) provides in pertinent part:

> Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.

their prospective relationship with another distributor, Emson Products. Plaintiffs allege they had a valid business expectancy with Emson (that Emson would promote and market Medallion's urine removal product) and had been invited to use Emson's booth at a trade show to demonstrate the effectiveness of Medallion's urine removal product compared to the solution provided by ICC. Plaintiffs allege that Defendants McAlister and Specter shouted at, harassed and threatened an employee of Medallion at this trade show and disrupted her presentation, and this conduct resulted in Emson's declining to promote and market Medallion's product as planned.

Defendants contend they are entitled to summary judgment because there is no evidence that Defendants' alleged conduct at the trade show was the cause of any interference in the business relationship between Medallion and Emson. Defendants point to evidence in the record that Emson placed an order with Medallion months after the trade show incident; they point out that no email or other communication between Medallion and Emson has been produced in discovery mentioning or referring to the incident; and they point to evidence showing that Emson had other complaints about Medallion (specifically, complaints about Medallion's response time in supplying the product). Based on this evidence, Defendants contend Plaintiffs cannot show that Defendants' conduct was what prevented Plaintiffs' legitimate expectancy with Emson from ripening into a valid business relationship as required to make out a claim of tortious interference under Illinois law. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2005) (the elements of a claim of tortious interference with prospective business advantage are: "(1) plaintiff's reasonable expectation of

entering into a valid business relationship; (2) defendant's knowledge of plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to plaintiff resulting from the interference.")

Plaintiffs in opposition do not point the Court to any *evidence* in the record showing that Defendants' alleged conduct at the trade show somehow interfered with or had an impact on Emson's actions regarding Plaintiffs. Plaintiffs merely state (without citation to relevant evidence) that Eddie Mishan, Emson's President, stopped returning Medallion's phone calls and emails and that Mishan is listed on Plaintiffs' Rule 26 disclosure as a witness for trial. Plaintiffs state that only Mishan "knows for sure why he did not proceed with Medallion as he had earlier promised." (Pltf. Opp. at 18-19.)

Plaintiffs' general assertions are insufficient to create a material issue of fact. It is Plaintiffs' obligation on summary judgment to come forward with specific facts creating a genuine issue for trial. Plaintiffs speculate that Mishan might testify that he chose to withdraw from working with Plaintiffs as a result of "a distaste for and disinclination to be involved with the gangland tactics of the Defendants." (Pltf. Opp. at 19.) However, such speculation is insufficient to create an issue for trial. The NPI Defendants' motion for summary judgment on Count VIII is granted.

## Count IX

Count IX is a claim by Medallion for defamation *per se* against Defendant Harriet Carter Gifts. (Complt., ¶¶ 192-196.) Medallion alleges that Harriet Carter falsely told customers who were dissatisfied with the urine removal product that was

24

manufactured by ICC that Medallion manufactured the product.

Harriet Carter contends it is entitled to summary judgment on this claim because there is no admissible evidence to show that Harriet Carter made any such statement.

To prove defamation under Illinois law, a plaintiff must show that defendant made a false statement about the plaintiff, there was an unprivileged publication of the statement to a third party, and the publication damaged the plaintiff. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 698 (7th Cir. 2006). A claim for defamation *per se* requires that the alleged defamatory statement be so "obvious and apparent on its face [that] injury to the plaintiff's reputation may be presumed." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007). In Illinois, there are five categories of statements that are defamatory *per se*: (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006).

Plaintiffs, in response, do not point to evidence in the record showing any specific statement or statements that Harriet Carter made to dissatisfied customers. They simply refer to evidence that Harriet Carter's customer service referred calls about problems customers reported with the urine removal product to Medallion. (Pltf. Mem. at 20.)

This is insufficient to show that Harriet Carter actually uttered any actionable defamatory statement about Medallion to customers, much less one that could be classified as defamation *per se*. Defendants' motion for summary judgment on Count IX

alleging defamation *per se* is granted.

## Counts X, XI

Count X alleges a claim against the ICC Defendants of tortious interference with contract; Count XI alleges a claim against the ICC Defendants of tortious inteference with prospective business advantage. The ICC Defendants move for summary judgment on both counts.

In order to establish tortious interference with contract under Illinois law, the plaintiff must first demonstrate the existence of a valid contract. *Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004) (the elements of the claim are: (1) a valid and enforceable contract; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of the breach; (4) breach caused by defendant's conduct; and (5) damages). As discussed above in connection with Count V, Plaintiffs have failed to meet their burden of showing that a cognizable requirements contract existed between Plaintiffs and the NPI Defendants. Accordingly, Plaintiffs' claim that the ICC Defendants tortiously interfered with such a contract fails.

In order to establish a claim for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference. *Adelman-Reyes v. Saint Xavier University*, 500 F.3d 662, 667 (7th Cir. 2007) (*Adelman-Reyes*).

The ICC Defendants contend Plaintiffs cannot prove these elements because (among other reasons) the ICC Defendants were not aware of a business relationship between Medallion and the NPl Defendants when they agreed to develop their Urine Gone formula for NPI, and they did not act with spite or ill will. (ICC Mem. at 8-9.) Medallion disputes these contentions. However, it points to evidence in the record purportedly showing that the ICC Defendants knew about Medallion and Medallion's product when McAlister contacted them to become an alternate supplier of Urine Gone. (*See* Pltf. Opp. at 11, 12, citing Plaintiffs' Response to Defendants' Statement of Facts, ¶¶ 56, 58, 79.)

Medallion's evidence is insufficient to create triable issues. First, Medallion's evidence, while sufficient to support a finding that the ICC Defendants knew the NPI Defendants were purchasing Urine Gone from another supplier (*i.e.*, Medallion), is insufficient to show that the ICC Defendants knew of the nature of the business relationship between Medallion and the NPI Defendants. As discussed above, no contractual relationship between Medallion and the ICC Defendants existed; nor does Medallion's evidence show that the ICC Defendants had knowledge of any other legitimate business expectancy of Medallion – whatever it was – with the NPI Defendants when they agreed to develop an alternate product. Defendants' knowledge of a legitimate business expectancy is a necessary element of the claim. *Adelman-Reyes*, 500 F.3d at 667.

Second, Medallion's evidence shows that "McAlister contacted ICC" about becoming an alternate supplier. (Pltf. Resp. to Defendants' Statement of Facts, ¶ 58(a).)

27

In order to make out a claim of tortious interference with prospective business advantage, there must be interference by the defendant, that is, wrongful conduct by the defendant "directed towards the party with whom the plaintiff expects to do business." *Lewis-Kearns v. Mayflower Transit, Inc.*, 932 F. Supp. 1061, 1071 (N.D. Ill. 1996). Medallion does not point to evidence showing that the ICC Defendants directed or engaged in conduct toward NPI; rather, the evidence is that NPI approached and sought to do business with the ICC Defendants. This is insufficient to show interference by the ICC Defendants.

Finally, under Illinois law, business competition is a complete defense to the tort of interference, which can be overcome only if the defendant's "conduct is motivated solely by spite or ill will." *Int'l Mrktg., Ltd. v. Archer-Daniels Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir. 1999). Medallion's evidence, showing that the ICC Defendants acted on NPI's request to develop an alternate product and become a supplier, is insufficient to create a factual issue that the ICC Defendants, in pursuing the business with NPI, were motivated solely by spite or ill will toward Medallion.

For all of these reasons, the ICC Defendants are entitled to summary judgment on Plaintiffs' claim for tortious interference with prospective economic advantage.

The motion of the ICC Defendants for summary judgment is granted as to Counts X and XI.

### Counts XII

Plaintiffs allege two counts of defamation *per se* by Medallion, both labeled Count XII. The first Count XII is alleged against the NPI Defendants based on conduct

28

of Defendant Specter. The second Count XII is based on conduct by Defendant McAlister.

Medallion contends that when NPI approached the ICC Defendants about becoming a potential supplier of Urine Gone, Specter told the ICC Defendants that he was looking for a back-up supplier because he was having problems with his current supplier (*i.e.*, Medallion), including the current supplier's failure to be able to deliver product on time, poor-quality product and inability to make orders. (Complt. ¶ 101.) Plaintiffs allege Specter's representations regarding Medallion's ability to perform were false.

The NPI Defendants move for summary judgment on this defamation claim on the ground that Specter did not mention Medallion by name when stating to Timlin that he was having problems with his supplier; therefore, Specter's statements on their face are not defamatory and cannot support a claim of defamation *per se*. In addition, the NPI Defendants argue (without pointing the Court to pertinent authority) that to establish defamation in this context, it must be shown that the statement was made to one of Medallion's competitors, and the evidence shows that Medallion is not a competitor of ICC.

Medallion, however, points to specific evidence in the record sufficient to create at least a triable issue that Timlin knew who Specter was talking about when he made the alleged false statements (Pltf. Mem. at 19-20); therefore, even if Medallion cannot make out a claim of defamation *per se* because Specter did not mention Medallion by name, Defendants have not demonstrated there is no factual dispute as to a claim of defamation

29

*per quod* arising from Specter's statements. The NPI Defendants' argument that in this

context, Medallion was not a competitor of ICC is not persuasive. Both Medallion and

ICC supplied the NPI Defendants with Urine Gone. This is sufficient to raise a factual

dispute that ICC was a competitor of Medallion. The NPI Defendants' motion for

summary judgment is denied as to the defamation count alleged against Specter.

The defamation count arising from conduct of McAlister is based on Medallion's

allegations that McAlister provided a copy of the test report Medallion obtained for its

own version of Urine Gone to a Fox News reporter in response to the reporter's request

for the test data represented in the Urine Gone TV commercial. According to Medallion,

the provision of this report, which identifies Medallion as the manufacturer of the Urine

Gone product, constitutes defamation *per se* because McAlister

> provided the test report to [the reporter] with knowledge that [the reporter]
> was testing a Urine Gone solution that Medallion did not manufacture, he
> provided the report with the intent to cause [the reporter] to believe that
> Medallion did manufacture the product, and he provided the report with
> knowledge that if [the reporter's] testing proved the product to be
> ineffective, Medallion's name and reputation as a competent and
> trustworthy manufacturer of enzyme-acting products would be impugned,
> thereby severely prejudicing Plaintiff Medallion in its profession, in the
> eyes of the infomercial industry, and in the eyes of the consuming public.

(Complt., ¶ 218.)

The NPI Defendants move for summary judgment on this count of defamation on

several grounds, including that no action for defamation *per se* can be established

because the true report on its face does not make a defamatory statement about

Medallion; rather, defamation must be inferred from (in the opinion of Defendants,

entirely speculative) circumstances.

30

Medallion's allegations are insufficient as a matter of law to make out a claim of defamation *per se*. However, summary judgment is not appropriate because the evidence identified creates at least material issues of fact as to whether Medallion suffered defamation *per quod*. Accordingly, the NPI Defendants' motion for summary judgment on Count XII based on the statements of McAlister is denied.

## Count XIV

Count XIV alleges a claim for civil conspiracy against all Defendants. Under Illinois law, a civil conspiracy requires: (1) an agreement between two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and (3) some tortious or illegal act by a party to the agreement in furtherance of the agreement. *Ill. Non-Profit Risk Magmt. Assoc. v. Human Serv. Ctr. of So. Metro-East*, 884 N.E.2d 700, 711 (Ill. App. 2008).

Defendants move for summary judgment on the ground that the tort Plaintiffs allege to underlie the conspiracy is misappropriation of trade secrets, which is preempted by the ITSA. Where the tort underlying a civil conspiracy is the misappropriation of trade secrets, the civil conspiracy claim is also preempted by the ITSA. *See Abanco International, Inc. v. Guestlogix, Inc.*, 486 F. Supp.2d 779, 782 (N.D. Ill. 2007) (dismissing a civil conspiracy claim based on trade secrets) (*Abanco*). Therefore, any civil conspiracy claim brought by Plaintiffs to the extent it is based on Defendants' alleged misappropriation of Plaintiffs' trade secrets is preempted. *See Abanco*, 486 F. Supp.2d 779.

In their opposition brief, Plaintiffs assert that their civil conspiracy claim is not

31

premised solely on trade secret misappropriation, but is also and "primarily" based on fraudulent and other conduct of Defendants. Plaintiffs assert: "The conspiracy is not premised simply on the trade secret misappropriation, but the entire scheme to replace Medallion (and by extension, Performance and Envera) as the exclusive suppliers of Urine Gone." (Pltf. Opp. at 13.) However, Plaintiffs do not point to evidence of an *agreement* between the Defendants to engage in a scheme to replace Medallion as the exclusive suppliers of Urine Gone. Further, Plaintiffs have not identified or pointed to evidence of a tortious or illegal act taken by a party in furtherance of such an agreement. As discussed above, the only tort claims Plaintiffs have sufficiently supported on summary judgment are the defamation claims. Plaintiffs have failed to point to evidence supporting a purported civil conspiracy based on an act of fraudulent conduct and/or trade secret misappropriation. Defendants' motions for summary judgment on Plaintiffs' civil conspiracy claim is granted.

Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims will now be addressed. (Docket Nos. 409, 412-2.)

The counterclaims brought by the NPI and ICC Defendants against Plaintiffs (and their officers Kroeger and Ghai) allege that Plaintiffs, disgruntled by NPI's legitimate decision to obtain Urine Gone from another supplier (ICC), engaged in a concerted course of conduct to seek revenge against the NPI and ICC Defendants by disparaging them and making false statements about ICC's Urine Gone product to the FTC, class-action lawyers (who ultimately initiated a class-action lawsuit against NPI for making false representations), a Fox news reporter, and Emson. Plaintiffs allegedly

32

falsely stated that ICC's Urine Gone solution did not contain enzymes, as represented on NPI's infomercial, when, in fact, the solution did contain enzymes.

### Trade Libel and Defamation Per Se Counterclaims

Plaintiffs move for summary judgment on the counterclaims for trade libel and defamation on the grounds that their alleged statements to the FTC are absolutely privileged, and the statements to the other third-parties are nonactionable due to qualified privilege and the innocent construction rule. (Pltf. Mot. at 2.)

Absolute and qualified privileges are defenses in actions for defamation under Illinois law. Absolute privilege applies to communications made to administrative agencies when the agencies are performing a "quasi-judicial function." *Kalish v. Illinois Education Assoc.*, 510 N.E.2d 1103, 1105 (Ill. App. 1987). A qualified privilege to make otherwise defamatory statements exists in certain circumstances. *Kuwik v. Starmark Star Marketing & Admin. Inc.*, 619 N.E.2d 129, 133 (Ill. 1993) (*Kuwik*). However, even privileged communications are actionable under Illinois law if there is an abuse of the privilege. Abuse of privilege may exist if the publication of the statement was reckless, lacked good faith or justification, or if the speaker knew the statement was false, or had a high degree of knowledge that the statement was false. *Dawson v. New York Life Ins. Co.*, 932 F. Supp. 1509, 1511 (N.D. Ill. 1996) (*Dawson*). The question of whether a qualified privilege has been abused is a question of fact for the jury to decide.

*Kuwik*, 619 N.E.2d at 134. The Court may not take this determination out of the hands of the jury unless the evidence in the record unequivocally demonstrates the absence of abuse. *Dawson*, 932 F. Supp. at 1511. A material issue of disputed fact exists in this

33

regard when the facts are viewed in the light most favorable to the non-moving party (Defendants here).

Genuine issues of material fact also exist for the jury on the issues of both absolute and qualified privilege. Defendants have pointed to evidence in the record that at the time Plaintiffs' statements about Urine Gone were made to the FTC, there was no pending FTC investigation or inquiry. (NPI Def. Opp. at 3.) Therefore, there are triable issues as to whether an absolute privilege applies and whether or not Plaintiffs abused a qualified privilege.

Likewise, summary judgment is not warranted on these counterclaims on the basis of an "innocent construction" of Plaintiffs' alleged statements. Under the "innocent construction rule," a statement that is reasonably capable of an innocent construction will not be found defamatory *per se*. *See Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996). The innocent construction rule requires a consideration of the statement "in context, giving the words, and their implications, their natural and obvious meaning." *Id.* Defendants contend, and the Court agrees, that Plaintiffs' alleged statements that the Defendants lied about having enzymes in their product and that their product did not work as it was advertised are not subject, as a matter of law, to an innocent construction. (*See* NPI Def. Opp. at 14-15.) Accordingly, material issues of fact exist on this issue, and Plaintiffs are not entitled to summary judgment.

Plaintiffs' motion for summary judgment on the defamation and trade libel counterclaims is denied.

34

### Uniform Deceptive Trade Practices Act

Plaintiffs also move for summary judgment on the NPI's counterclaim under Illinois' Uniform Trade Practices Act on the ground of the innocent construction rule. For the same reasons discussed above, summary judgment is not warranted on these claims. Plaintiffs also urge summary judgment on this counterclaim because "there is no evidence of willful acts by the [Plaintiffs] required in order to support an award of attorneys' fees under the Act." (Pltf. Mot. at 2.) Plaintiffs' argument is unclear; in any event, the Court finds that triable issues are presented as to whether Plaintiffs' alleged acts were "willful."

Plaintiffs' motion for summary judgment is denied as to the NPI Defendants' counterclaim under Illinois' Uniform Trade Practices Act.

### Maintenance

The NPI Defendants' maintenance counterclaim is based on allegations that Plaintiffs provided class-action lawyers with documents and misleading information about ICC's urine removal product, causing the lawyers to bring a class-action lawsuit against NPI. The lawsuit, *Eckhaus v. Nature's Pillows, Inc., et al.*, No. 06 c 985, filed in the United States District Court for the Eastern District of New York, was eventually settled, with the NPI Defendants' agreeing to pay approximately $300,000 in attorneys' fees.

Plaintiffs move for summary judgment on the maintenance counterclaim on the grounds that the class-action lawsuit underlying the claim was settled. Summary judgment is not warranted on this basis. The NPI Defendants have shown that genuine

issues of material fact exist with respect to the elements Plaintiffs have stated for this claim. *See* NPI Def. Mem. at 13-14; Pltf. Mem. at 11 ("A plaintiff must establish (1) the commencement or continuation of . . . prior criminal or civil proceedings; (2) a termination '*on the merits*' of the prior proceeding in a manner indicative of innocence of the plaintiff; (3) lack of probable cause for the prior proceeding against the plaintiff; (4) malice; and (5) damages proximately resulted to the plaintiff.") (Emphasis added.) Accordingly, Plaintiffs' motion for summary judgment is denied as to the counterclaim of maintenance.

*Tortious Interference*

The ICC Defendants allege that Plaintiffs tortiously interfered with the ICC Defendants' business relations with the NPI Defendants. Specifically, the ICC Defendants allege "[a] valid business relationship existed between NPI and ICC"; and Plaintiffs "intentionally interfered with this relationship by, *inter alia*, telling multiple sources that the ICC-manufactured product was a 'counterfeit', ordering, paying for and dissemination of 'test' results which did not accurately reflect the composition and ingredients of the ICC product; and making false statements to the media regarding the composition, ingredients and effectiveness of the ICC-manufactured product and making false statements to NPI regarding the composition, ingredients and effectiveness of the ICC manufactured product." (ICC Counterclaim, ¶ 137.)

Plaintiffs contend they are entitled to summary judgment on this counterclaim, stating:

36

> ICC claims tortious interference with a prospective business relationship
> despite its admission that it never had and never anticipated having any
> contract with NPI except to supply product when and if NPI ordered it.
> NPI has done just that to the tune of approximately 3,000,000 units
> ordered to date. (Statement 55 – Timlin Dep., 162:15-163:13). . . . Thus,
> ICC has nothing to support the claim . . . .

(Pltf. Mem. at 15.)

The ICC Defendants contend Plaintiffs have not met their burden of

demonstrating they are entitled to summary judgment because Plaintiffs' argument is

"vague" and does not show that there are no genuine issues of fact with respect to all of

the elements of a cause of action for tortious interference. Although Plaintiffs do not

address all of the elements of the cause of action, the elements of tortious interference

with business relations were clearly addressed in the NPI's and ICC Defendants'

motions. As the ICC Defendants acknowledge, in order to make out a claim of tortious

interference with business advantage, a plaintiff must show, among other things, that the

defendant's conduct interfered with or caused a breach or termination of some business

expectancy, causing plaintiff damage. (ICC Opp. at 3-4, citing *Adelman-Reyes*, 500 F.3d

662.)

Plaintiffs argue the evidence does not show that the ICC Defendants lost any

business expectancy with the NPI Defendants as a result of Plaintiffs' actions. Plaintiffs

point to evidence (the deposition testimony of Mr. Timlin) indicating that all of the ICC

Defendant's business expectations have been met. Therefore, to survive summary

judgment, the ICC Defendants must come forward with facts sufficient to create a triable

issue that Plaintiffs' conduct interfered with a legitimate business expectancy they had

with NPI. The ICC Defendants have not pointed to facts to create a factual dispute as to this element of the claim. Therefore, Plaintiffs' motion for summary judgment on this counterclaim is granted.

## Civil Conspiracy

Plaintiffs move for summary judgment on the civil conspiracy counterclaims solely on the basis that there are no viable underlying torts. (Pltf. Mem. at 15.) However, as discussed above, viable counterclaims remain. Therefore, Plaintiffs have not shown a basis for summary judgment on the civil conspiracy counterclaims.

Finally, Plaintiff appear to assert that they are entitled to summary judgment on all counterclaims because "no Counterclaim Plaintiff has produced evidence establishing recoverable damages." (Pltf. Mot. at 1.) However, Plaintiffs have not demonstrated they are entitled to summary judgment on this basis, and summary judgment is not appropriate on this ground.

## CONCLUSION

In accordance with the foregoing:

(1) the Motion for Summary Judgment of Defendants Nature's Pillows, Inc.; Direct Response, Inc.; Media Enterprises II, Inc.; William McAlister; Bradley Specter; Plymouth Direct, Inc.; and Harriet Carter Gifts, Inc. (Docket No. 403) is GRANTED as to Counts I, II, III, IV, V, VI, VII, VIII, IX, and XIV and DENIED as to the defamation claims alleged in Count XII;

38

(2)  the Motion for Summary Judgment of Defendants James Timlin and Innovative Chemicals Corporation (Docket No. 405) is GRANTED as to all counts alleged against the ICC Defendants;

(3)  Plaintiffs' Motion for Partial Summary Judgment on Counts I through V and Count VII (Docket No. 408) is DENIED; and

(4) the Motion for Summary Judgment of Plaintiffs/Counterclaim-Defendants Medallion Products, Inc.; Envera, LLC; Sheetal Ghai; and Monica Kroeger on the Counterclaims of Nature's Pillows, Inc.; Direct Response, Inc.; Plymouth Direct, Inc.; Innovative Chemicals Corporation; and James Timlin (Docket No. 409) is GRANTED as to the ICC Defendants' counterclaim for tortious interference with business relations and DENIED as to all other counts.

Date: _November 20, 2008_
11-20-2008

JOHN W. DARRAH
United States District Court Judge

39